**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**BANKRUPTCY DIVISION**
**DIVISION OF ST. THOMAS AND ST. JOHN**


IN RE:

JEFFREY J. PROSSER,                      Bankruptcy No. 06-30009


      Debtor                           Chapter 7


STAN SPRINGEL, CHAPTER 11
TRUSTEE OF THE BANKRUPTCY
ESTATE OF INNOVATIVE
COMMUNICATION CORPORATION[1]

      Plaintiff

v.                                       Adversary No. 08-03002
                                         **Related to Doc. Nos. 139** Jeffrey Prosser's Motion for
                                         Summary Judgment and **141** Trustee Springel's Motion
                                         for Summary Judgment


DAWN PROSSER; JEFFREY J.
PROSSER; JAMES P. CARROLL,
CHAPTER 7 TRUSTEE OF THE
BANKRUPTCY ESTATE OF
JEFFREY J. PROSSER; GREENLIGHT
CAPITAL QUALIFIED, L.P.;
GREENLIGHT CAPITAL, L.P.; AND
GREENLIGHT CAPITAL OFFSHORE,
LTD.,

      Defendants


**MEMORANDUM OPINION, REPORT AND RECOMMENDATION TO THE DISTRICT
COURT AND CERTIFICATION PURSUANT TO DISTRICT COURT ORDER**

On January 31, 2008, Trustee Springel, the chapter 11 trustee of the bankruptcy estate of

Innovative Communication Corporation (hereinafter "New ICC"),[1] commenced this adversary proceeding seeking to avoid the transfer and recover certain real property, i.e., 252 El Bravo Way, Palm Beach, Florida ("the Palm Beach property"), transferred by New ICC to Jeffrey Prosser, the Chapter 7 Debtor, and his nondebtor wife, Dawn Prosser.[2]  The statutory bases for the actions are 11 U.S.C. §§544 and 550.  Before the court are Jeffrey Prosser's Motion for Summary Judgment, Doc. No. 139, and Trustee Springel's Motion for Summary Judgment, Doc. No. 141.[3]  Trustee Springel filed a response to Jeffrey Prosser's motion, Doc. No. 146. Objections to Trustee Springel's motion were filed by Jeffrey Prosser, Doc. No. 147, James P. Carroll, the chapter 7 trustee of the bankruptcy estate of Jeffrey Prosser, Doc. No. 149, and Dawn Prosser, Doc. No. 152.

On March 28, 2008, Dawn Prosser filed a Motion for Withdrawal of Reference, Doc. No. 20. On August 21, 2008, the District Court of the Virgin Islands Division of St. Thomas and St. John

---

[1] *In re Innovative Communication Corporation*, Case No. 07-30012.  We note that this company is referred to by the parties and in the exhibits interchangeably as both "Innovative Communication Corporation" and "Innovative Communications Corporation."  *See* Promissory Note, Tab 13 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0065; Transcript of 11/10/2008, Doc. No. 162, at 105; Warranty Deed, Tab 12 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0063-64 (referring to "Innovative Communication Corporation").  *But see also* Audited Financial Statements, Tab 31 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment; Minutes of 11/5/1999 and 7/17/2000, Tab 16 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0081-91 (referring to "Innovative Communications Corporation").  Throughout this opinion, we refer to the company as "New ICC."

[2] The Defendants in this Adversary Proceeding are Jeffrey Prosser, Dawn Prosser, Trustee Carroll, who is the Chapter 7 Trustee of Jeffrey Prosser's bankruptcy estate, and Greenlight Capital Qualified, L.P., Greenlight Capital, L.P., and Greenlight Capital Offshore, Ltd., (collectively, "Greenlight"), who are creditors in the Chapter 7 and Chapter 11 cases. Count Nine of the Trustee's First Amended Complaint is the only count seeking relief against Greenlight.  *See* Doc. No. 109.  Count Nine was dismissed by stipulation of the parties, Doc. No. 124.  Therefore, when we use the term "Defendants," we are referring only to Jeffrey Prosser, Dawn Prosser, and Trustee Carroll.

[3] Unless otherwise noted, Doc. Nos. refer to Adversary No. 08-03002.

issued an opinion and order denying the motion. Case No. 3:08-CV-00054-CVG, Doc. No. 7. However, the District Court provided that "Dawn Prosser may renew her motion with respect to the Palm Beach Action...if and when the Bankruptcy Division certifies such action as trial-ready."[4] The District Court's opinion and order, Doc. No. 184, were not entered on the Bankruptcy Court's docket until April 23, 2009, and consequently, the court was unaware of the order when it was issued by the District Court. As a result of that order, this opinion constitutes our proposed findings of fact and conclusions of law, which we recommend for adoption by the District Court. If the District Court does not adopt this opinion, we certify that the Palm Beach Action is ready for trial for purposes of Dawn Prosser's ability to renew her Motion for Withdrawal of Reference.

Background

On September 23, 1999, Jeffrey and Dawn Prosser entered into a contract to purchase the property located at 252 El Bravo Way, Palm Beach, Florida ("the Palm Beach property"). *See* Contract for Sale and Purchase, Tab 2 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0011-14. In December 1999, the Prossers executed an assignment of that contract to New ICC. *See* Assignment Agreement, Tab 3 to Doc. No. 141, Trustee's Motion for Summary Judgment, at PB0015. Jeffrey Prosser, in his capacity as New ICC's president, was the sole signatory on the agreement on behalf of New ICC. *Id.* On December 14, 1999, New ICC purchased the Palm Beach property. *See* Purchaser's Closing Statement, Tab 9 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0058. On April 10, 2000, New ICC transferred title

---

[4] *Id.* at 11. In its opinion, the court cites to *In re Nady*, 138 B.R. 608, 610 (D. Nev. 1992), noting that "the bankruptcy judge could rule on discovery matters and submit its conclusions and recommendations as to dispositive motions such as motions to dismiss, motions for summary judgment, etc." *Id.* at 9.

to Jeffrey and Dawn Prosser, as husband and wife.[5]  *See* Warranty Deed, Tab 12 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0063-64.  The deed was executed by Jeffrey Prosser, as chairman of New ICC.  *Id.* at PB0064.  The Prossers made no payment to New ICC at the time of the transfer and have made none since.[6]  Thirteen months later, on May 1, 2001, Jeffrey Prosser, but not Dawn Prosser, executed an unsecured promissory note in favor of New ICC in the amount of $5.65 million, the original purchase price of the property.  *See* Promissory Note, Tab 13 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0065.  The note was made retroactive to April 10, 2000, the date that New ICC transferred the property to the Prossers.  *Id.*  The note provided for no periodic principal or interest payments and for only one balloon payment for the full amount due on April 10, 2007.  *Id.*  No payment was ever made on the note by Jeffrey Prosser.  *See* Transcript of 6/11/2008, Tab 4 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0028.   In addition to transferring the Palm Beach property to the Prossers for no consideration, New ICC also paid for remodeling of the Palm Beach property, the insurance premiums and taxes related to that property.  *See* Deposition of Jeffrey J. Prosser

---

[5] Although the deed does not specifically state that the transfer of the Palm Beach property was to Jeffrey and Dawn Prosser as tenants by the entireties, the deed provides that the transfer was to "Jeffrey J. Prosser and Dawn Prosser, husband and wife."  With respect to "real property, intent to hold the property as a tenancy by the entireties is presumed."  *Beal Bank v. Almand & Assocs.*, 780 So. 2d 45, 55 (Fla. 2001).  Both Jeffrey and Dawn Prosser claim an interest in the property as tenants by the entireties.  *See* Amended Schedule A, Case No. 06-30009, Doc. No. 2468; Dawn Prosser's Answer to Complaint, Doc. No. 126, at ¶ 25.  The court takes judicial notice of Jeffrey Prosser's Amended Schedules.

[6] *See* Transcript of 6/11/2008, Tab 4 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0028 (Testimony of Jeffrey Prosser: "Q. But you've never provided any payment or consideration toward the purchase of this property, have you? A. No; directly, no."); Declaration of Byron Smyl, Tab 1 to Doc. No. 141, at PB0001 ¶ 6 ("According to the records of New ICC, the Prossers gave no contemporaneous consideration to New ICC.").

(7/22/2008), Tab 7 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0043. The Prossers pledged the property as collateral for three loans from Bank of America and kept the proceeds for their own use. *See* Transcript of 8/25/2008, Tab 20 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0123. None of the proceeds from these loans went to New ICC. *Id.*

An involuntary bankruptcy petition was filed against New ICC on July 5, 2007, (approximately three months after Jeffrey Prosser's note for the $5.65 million was due in full and unpaid) and an order for relief was entered on September 21, 2007. *See* Involuntary Petition, Case No. 07-30012, Doc. No. 1; Order for Relief, Case No. 07-30012, Doc. No. 60. Trustee Springel seeks to avoid the transfer by New ICC of the Palm Beach property as a fraudulent conveyance pursuant to §544(b) of the Bankruptcy Code and applicable state law. Jeffrey Prosser avers that the statute of limitations has expired, no creditor as required by §544(b) was identified,[7] and Trustee Springel has failed to plead fraud with requisite particularity.[8]

───────────────────────

[7] At the hearing held November 10, 2008, counsel for Jeffrey Prosser argued that the trustee failed to identify an actual creditor for purposes of §544(b) and challenged his standing. Transcript of 11/10/2008, Doc. No. 162, at 98-114. The court found the issue raised was not a question of the trustee's standing, which he clearly had, but rather whether the trustee could meet the burden of proof under §544(b). *Id.* at 176.

[8] Federal Rule of Civil Procedure 9(b), made applicable to adversary proceedings through Bankruptcy Rule of Procedure 7009, "requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of 'date, place or time' fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). The court finds that Trustee Springel has satisfied the burden of pleading with particularity. He has identified the parties involved, the chronology of events surrounding the

(continued...)

<u>Summary Judgment Standard</u>

Pursuant to Federal Rule of Civil Procedure 56(c), the moving party is entitled to summary judgment where the evidence shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  The non-moving party can defeat summary judgment if it produces evidence in the record creating a genuine issue of material fact. *El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007).  However, where the moving party has satisfied its burden under Rule 56(c), the non-moving party cannot "rely merely on allegations or denials in its own pleading; rather, its response must...set out specific facts showing a genuine issue for trial." Fed. R. Civ. Pro. 56(e)(2).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

<u>Applicable State Law</u>

Section 544(b)(1) of the Bankruptcy Code provides the trustee with the power to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title."  Because the action is based upon §544, the court must determine which state's fraudulent conveyance law applies.  Bankruptcy courts must apply the choice of law rules of the state in which the court sits.

---

[8](...continued)
transfer and details with regard to the purchase and transfers of the property.  He has referenced deeds evidencing these transfers and the promissory note signed by Jeffrey Prosser.  Trustee Springel is not required to conclusively establish fraudulent intent in his pleading. He has met the requirement of Rule 9(b) by placing the defendants on notice of the precise misconduct alleged.

*See In re PHP Healthcare Corp.*, 128 Fed. Appx. 839, 843 (3d Cir. 2005)*; Bohm v. The Horsley Co.,* 333 B.R. 261, 276 (Bankr. W.D. Pa. 2005). This case is pending in the Virgin Islands. By statute, the Virgin Islands applies the Restatement (Second) of Conflict of Laws,[9] and the law applied by the courts of the situs will be followed.[10] Inasmuch, as Florida is the location of the real property, Florida law will determine whether the conveyance was fraudulent. However, bankruptcy courts apply the limitations period of the state in which they sit. *In re W.R. Grace & Co.,* 397 B.R. 701, 704 (Bankr. D. Del. 2008) (citing to *In re PHP Healthcare Corp.*, 128 Fed. Appx. at 843). Therefore, the Virgin Islands' applicable statute of limitations governs.[11]

We address first Jeffrey Prosser's Motion for Summary Judgment. Doc. No. 139

.

---

[9] "The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." 1 V.I.C. § 4. In determining applicable substantive law, the court shall apply the governing principles found in the Restatement (Second) of Conflict of Laws. *Benjamin v. Eastern Airlines, Inc.*, 18 V.I. 516, 519 (D.C.V.I. 1981).

[10] "(1) Whether a conveyance transfers an interest in land and the nature of the interest transferred are determined by the law that would be applied by the courts of the situs. (2) These courts would usually apply their own local law in determining such questions." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 223.

[11] For purposes of choice of law, a statute of limitations is considered procedural and the forum's limitations period will apply. *Benjamin,* 18 V.I. at 520. Although the Virgin Islands statute has a borrowing provision which bars causes of action arising outside of the Virgin Islands where the applicable foreign statute of limitations has expired, it applies only where *both* parties are nonresidents of the Virgin Islands. 5 V.I.C. § 41. Therefore, if at least one party is a Virgin Islands resident, the borrowing provision does not apply. As Jeffrey Prosser has declared he is a resident of the Virgin Islands, the borrowing provision does not apply. *See* Jeffrey Prosser's Chapter 11 Petition, Case No. 06-30009, Doc. No. 1. Therefore, the action will only be time-barred if the applicable Virgin Islands' statute of limitations has expired.

<u>Jeffrey Prosser's Motion for Summary Judgment</u>

<u>Statute of Limitations</u>

Jeffrey Prosser contends that this action is time barred. There are two time requirements implicated when a trustee files an avoidance action under §544(b). If the creditor in whose place the trustee stands under §544(b) would have been barred by the statute of limitations on the bankruptcy petition date, then the trustee may not proceed. *See Haskell v. Bruno's, Inc.*, 303 F.3d 308, 314 (3d Cir. 2002); Orr *v. Bernstein*, 259 B.R. 555, 559 (Bankr. D.N.J. 2001). However, if the limitations period did not expire with respect to the creditor as of the petition date, then §546(a) provides the trustee with a two year period after the entry of the order for relief in which to bring an avoidance action. *Id.* at 558-59. The order for relief was entered on September 21, 2007, and the adversary proceeding was commenced on January 31, 2008. It is clear that Trustee Springel timely filed his complaint under §546(a). However, the parties dispute whether the action was time-barred under §544(b) as of the bankruptcy petition date, thereby precluding the trustee from proceeding.

The central issue raised by the parties is whether the Virgin Islands would apply a two year or twenty year limitations period. The twenty year limitations period applies to "[a]ctions for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it shall appear that the plaintiff, his ancestor, predecessor, or grantor was seized or possessed of the property in question within twenty years before the commencement of the action." 5 V.I.C. § 31(1). The two year limitation applies to "an action for libel, slander, assault, battery, seduction, false imprisonment, or for any injury to the person or rights of another not arising on contract and not herein especially enumerated...." 5 V.I.C. § 31(5). If applicable, the twenty-year statute of limitations clearly would not have expired. We find, however,

that inasmuch as a fraudulent conveyance claim sounds in tort, the two year statute of limitations applies. *Fountain Valley Corporation v. Wells*, 98 F.R.D. 679, 684 (D. V.I. 1983).[12] Jeffrey Prosser contends that Trustee Springel has failed to meet his burden to warrant application of the discovery rule. Jeffrey Prosser's Brief in Support of Motion for Summary Judgment, Doc. No. 140, at 6. However, pursuant to 5 V.I.C. §32(c), "[i]n an action upon a new promise, fraud, or mistake, the limitation shall be deemed to commence only from the making of the new promise or the discovery of the fraud or mistake." Moreover, pursuant to the statute, the Virgin Islands applies the discovery rule, such that the limitations period will commence either when the plaintiff discovers the fraud or when the plaintiff reasonably should have discovered the fraud. *Montgomery v. Estate of Griffith*, 49 V.I. 255, 265 (V.I. Super. Ct. 2008).

The transfer of the Palm Beach property from New ICC to the Prossers occurred in April of 2000, seven years before the involuntary petition was filed against New ICC. The transaction was allegedly disclosed in the financial statements of New ICC[13] and the deed was publicly recorded. However, the Virgin Islands' discovery provision deems the limitations period to commence when

---

[12] *Fountain Valley* is the only published Virgin Islands case we have located addressing the applicability of the statute of limitations to a fraudulent conveyance action. In that case, the underlying claim was based on conspiracy, not on an effort to avoid the transfer and recover real property. We recognize that the pending action to recover real property on a fraudulent conveyance theory is closely aligned with the actions governed by the twenty-year limitations period. Nonetheless, inasmuch as *Fountain Valley* is the only Virgin Islands case addressing the statute of limitations in the fraudulent conveyance context, we impose a two year limitations period and decline to create a different limitations period where the court in *Fountain Valley* has already spoken on the issue.

[13] The financial statements which first made the disclosure, i.e., for the years ended December 31, 2000 and 1999, were not completed until October of 2001 and, as presented, mischaracterize the actual nature of the transfer. *See* discussion at note 15 *infra*. *See also* note 30 *infra*.

the fraud is discovered or should have been discovered, which is not necessarily the same as the date the transfer is discovered or discoverable.[14] "The burden is on the movant to demonstrate the absence of a genuine issue of material fact surrounding...discovery of the alleged fraud....The applicability of the statute of limitations often implicates factual questions as to when the plaintiff should have discovered the elements of the cause of action." *Montgomery,* 49 V.I. at 266. Therefore, the movant bears "a heavy burden in seeking to establish as a matter of law" that such claims are time barred. *Id.*

Under Florida law, "a recorded document 'is constructive notice to creditors and subsequent purchasers not only of its own existence and contents, but of such other facts as those concerned with it would have learned from the record, if it had been examined, and inquiries suggested by it, duly prosecuted would have disclosed.'" *Mead v. United States,* 374 B.R. 296, 310 (Bankr. M.D. Fla. 2007). As the deed to Jeffrey and Dawn Prosser was recorded, the transfer was not concealed. However, the terms surrounding the transfer, such as the lack of any consideration paid and the after-the-fact unsecured promissory note provided only by Jeffrey Prosser, were not available to indicate the nature of the transfer. Jeffrey Prosser contends that a prudent person looking at the records would see that a mortgage was not recorded, prompting further inquiries. Transcript of 11/10/2008, Doc. No. 162, at 117-18. Trustee Springel contends it is not reasonable to expect commercial creditors dealing with a commercial corporation to examine residential real property records in the

_____

[14] *See Campbell v. Deans*, 249 B.R. 121, 132 (Bankr. D.S.C. 2000) (finding that "registration of a deed, by itself, is not sufficient to put a creditor on constructive notice of a fraudulent transfer"). *But see Treinish v. Spitaleri*, No. 06-11, 2006 Bankr. LEXIS 4155, *6-8 (Bankr. N.D. Ohio May 9, 2006) (interpreting the language of Ohio's fraudulent conveyance statute to commence the limitations period upon reasonable discovery of the transfer as opposed to discovering the fraudulent nature of the transfer and finding that a properly recorded deed would provide notice of the transfer).

first place. *Id.* at 146-47. The court agrees with Trustee Springel. What the Prossers own as husband and wife is wholly irrelevant to what the corporation owes to its creditors at the time the debt is incurred, absent an effort by the creditor to rely on the individuals' assets. There is no evidence of any such effort on the record. The court finds that sufficient information was not disclosed by the recorded deed to place creditors on notice of the fraudulent nature of the transaction. There is nothing about the recorded deed that suggests that it was part and parcel of a fraudulent transfer. In addition, the fact that the Prossers took out mortgages recorded against the Palm Beach property would further mislead any general corporate creditor who did search the records, as to the ownership of the property. *See* Mortgages, Tabs 22, 23, 25 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0134-51, PB0154-73.

The running of the statute of limitations is tolled until the fraud could reasonably be discovered. The Prosser parties question whether the financial statements for 1999 and 2000 provided notice. The court finds that they did not. Even when they became available more than a year after the transfer, there was no public access to the audited financial statements[15] or the

---

[15] Furthermore, even the audited financial statements do not accurately reflect the nature of the transaction. Note G in the financial statements reflects that the Palm Beach property was transferred by New ICC to the stockholder/president in exchange for a promissory note. Tab 31 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0237. In reality, the transfer was made to Jeffrey *and* Dawn Prosser, and no promissory note was given in exchange. *See* Warranty Deed, Tab 12 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0063-64. The note was created by Jeffrey Prosser alone thirteen months after the transfer from New ICC to the Prossers. *See* Promissory Note, Tab 13 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0065. By reading the audited financial statements, which are prepared to be relied upon by third parties to whom they are presented, a creditor would be led to believe that the note was created contemporaneously as consideration for the conveyance to Jeffrey Prosser alone, when in reality the note was nothing more than an ex post facto unsecured promise by Jeffrey Prosser alone to repay New ICC in a lump sum years in the future for a conveyance to him and his wife.

(continued...)

promissory note to inform creditors of the terms of the transaction. Deposition of John P. Raynor (5/20/2008), Tab 21 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0129. By simply relying upon the recordation of the deed and the content of New ICC's corporate documents, which were unavailable to the public,[16] Jeffrey Prosser has not met his burden to show that the limitations period expired.

Therefore, for the above stated reasons, we recommend that the District Court deny Jeffrey Prosser's Motion for Summary Judgment, Doc. No. 139.[17]

---

[15](...continued)
The audited financial statements also fail to reflect the fact that the promissory note was executed by Jeffrey Prosser thirteen months after New ICC transferred the property to the Prossers. The audited financial statements misleadingly state that the Palm Beach property was transferred to the stockholder president in exchange for the promissory note as opposed to providing that the note was *nunc pro tunc.* The inaccuracies in these financial statements are misrepresentations by New ICC's management. According to Black's Law Dictionary, an "audit" is "[a] formal examination of an individual's or organization's accounting records, financial situation, or compliance with some other set of standards." As stated in the report of the independent certified public accountants, "[the] financial statements are the responsibility of the Company's management." *See* Audited Financial Statements, Tab 31 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0221. *See also Catalano v. Worrilow*, 55 Pa. D. & C.2d 339 (Pa. C.P. 1972) (citing to Anthony, Management Accounting, 1970, 4th Ed. for the proposition that "[m]any people have the impression that the auditor is responsible for preparing the financial statements. This is not so. Preparation of the statements is the responsibility of management, not of the auditor. This is practice in the commercial field.") As made clear by the accountant's statement at the beginning of the audited financial statements, these financial statements were prepared in that fashion. Here, in carrying out the accountant's responsibility to express an opinion on the statements, the accountants noted the "significance of the departures from accounting practices generally accepted in the United States." *Id.* at PB0222.

[16] Deposition of John P. Raynor (5/20/2008), Tab 21 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0129.

[17] As a secondary argument, Trustee Springel contends that Jeffrey Prosser has waived all defenses with respect to Greenlight, creditors which Trustee Springel contends could have avoided the transfer as of the bankruptcy petition date. As such, Trustee Springel asserts,

(continued...)

12

<u>Trustee Springel's Motion for Summary Judgment</u>

The court will now address Trustee Springel's Motion for Summary Judgment, Doc. No. 141, and the objections thereto. Jeffrey Prosser's Objection, Doc. No. 147, Objection/Response of the Chapter 7 Trustee, Doc. No. 149, and Dawn Prosser's Opposition, Doc. No. 152. Trustee Springel's First Amended Complaint, Doc. No. 109, sets forth nine causes of action.[18]

<u>Counts One and Three</u>

In Counts One, Two, and Three, the Trustee seeks to avoid the transfer and recover the Palm Beach property under §§544 and 550 and the law of New York, Florida, and the Virgin Islands,

---

[17](...continued)
standing in the shoes of Greenlight, he will not be barred by the statute of limitations. *See G-I Holdings, Inc. v. Those Parties Listed on Exhibit A*, 313 B.R. 612, 632 (Bankr. D.N.J. 2004)("Under §544(b), the trustee succeeds to the rights of an unsecured creditor in existence at the commencement of the case who can avoid the transfer or obligation under applicable state law."). A General Release Agreement was entered into by New ICC, Jeffrey Prosser, and other of Prosser's companies as the "Releasors," in favor of Greenlight, among others, as the "Released Parties" on June 6, 2006. Case No. 07-30012, Exhibit M to Doc. No. 16 (filed under seal) (Although the document was filed under seal, the facts stated in this opinion are stated in Trustee Springel's Motion for Summary Judgment, which is a matter of public record.) Jeffrey Prosser has not defended against Trustee Springel's assertion as to this point. We note that the agreement contains language stating, "each of the Releasors...hereby releases, acquits, and forever discharges with prejudice, each of the Released Parties from past, present or future...defenses...." *Id.* at 3. However, if the language of this document needs to be construed, the document provides, "The Parties irrevocably agree that in the event of any litigation enforcing the terms and conditions hereof, or otherwise relating in any way to the matters addressed herein...any such litigation shall be brought exclusively in the Delaware Bankruptcy Court, or in the United States District Court for the District of Delaware..., to the extent that the Delaware Bankruptcy Court cannot or will not exercise jurisdiction." *Id.* at 5. We do not find it necessary to address whether this agreement has waived all defenses with respect to Greenlight as Trustee Springel asserts, because in this proceeding Jeffrey Prosser did not contest the facts asserted by the Trustee as to this issue.

[18] Count Nine, seeking declaratory relief that Greenlight has no interest in the property, was voluntarily dismissed and therefore will not be discussed in this opinion. Stipulation of Dismissal of Count 9, Doc. No. 124.

respectively. Trustee Springel's First Amended Complaint, Doc. No. 109, at ¶¶ 29-50. Counts One (asserting New York law) and Three (asserting Virgin Islands law) should be dismissed without prejudice because they seek relief under state law that we find not applicable.[19] Moreover, the relief requested in Counts One and Three is identical to that sought in Count Two, asserting Florida law, which we find to be the governing law. Thus, we will address the merits in Count Two under Florida law.

<u>Count Two: Avoidance of Transfers and Recovery of Fraudulent Transfers</u>

<u>Identification of Actual Creditor</u>

In order for a trustee to succeed under §544(b), the trustee must show (i) the existence of an actual creditor, (ii) with an allowable claim, (iii) who, under applicable law, could avoid all or part of the transfer. *See Haskell*, 303 F.3d at 314. Specifically, a trustee must identify a creditor holding an unsecured claim that is allowable under §502. 11 U.S. C. §544(b)(1). Notwithstanding applicable state law, the trustee's avoidance powers are not limited to the amount that the actual creditor could have recovered. *Grubbs Construction Co. v. The Florida Department of Revenue*, 321 B.R. 346, 351 (Bankr. M.D. Fla. 2005). The trustee may avoid the entire transfer.

Pursuant to Florida law, "[a] transfer made...by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made..., if the debtor made the transfer...with actual intent to hinder, delay, or defraud any creditor of the debtor...." Fla. Stat. §726.105. For purposes of the statute, the plaintiff must demonstrate that he qualifies as a "creditor" by showing that he has a "claim." *Friedman v. Heart Institute of Port St. Lucie, Inc.*, 863

---

[19] In this case, the applicable law under §544(b) is Florida law. *See* discussion of Applicable State Law *supra* at pp. 6-7. The Trustee addresses applicable Florida law in Count Two.

So.2d 189, 192 (Fla. 2003). "Claim" is broadly construed so as to fully protect even contingent

creditors "against fraudulent transfers as holders of absolute claims." *Id.* For purposes of Florida's

fraudulent transfer statute, a "claim" is "a right to payment, whether or not the right is reduced to

judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

legal, equitable, secured, or unsecured." Fla. Stat. §726.102(3).

In order to meet his burden under §544(b), Trustee Springel identifies Anixter Bros., Inc.,

Comstar, Inc., and Greenlight as actual creditors who could have avoided the transfer under

applicable state law. Greenlight[20] filed an involuntary bankruptcy petition against New ICC on July

5, 2007, and met the requirement of having a claim in existence on the bankruptcy petition date.

This court found that "[e]ach of the Greenlight entities is a holder of a claim against New ICC that is

not the subject of a bona fide dispute."[21] Schedule F, listing Creditors Holding Unsecured

---

[20] In 2001, Greenlight commenced a fiduciary duty action in the Delaware Chancery Court, which was consolidated with an action filed in 1998, against Jeffrey Prosser and New ICC's predecessor in interest (referred to as "Old ICC"), among others, at Civil Action No. 16415. Hereinafter, we will refer to these consolidated cases as the "shareholder litigation." The cases were decided in 2004, and on January 9, 2006, final judgment was entered in favor of Greenlight. *See* discussion *infra* pp. 24-31. Jeffrey Prosser testified that Greenlight's claim arose in the late 1990's. *See* Transcript of 8/25/2008, Tab 20 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0125-26 ("Q. ...[I]sn't it true that lawsuits by shareholders were filed relating to the privatization? A. ...[Y]es, there were lawsuits filed. Q. Relating to the privatization back in the late '90s...? A. Yes....Q. And those included Brickel [*sic*] Partners and Greenlight back in 1998, correct? A. Yes, that's correct.").

[21] Order Granting Greenlight's Motion for Summary Judgment and Entry of Order for Relief Pursuant to 11 U.S.C. § 303(h), Fed. R. Bankr. P. 1018 and 7056 and Fed. R. Civ. P. 56, Case No. 07-30012, Doc. No. 72. In his Brief in Support of Motion for Summary Judgment, Jeffrey Prosser challenges *when* Greenlight became a creditor of New ICC. *See* Doc. No. 140, at 9-10 ("While the Trustee may point to the Greenlight suit in an attempt to support his assertion, that suit wasn't even filed until a year after the transfer. At no time did that suit identify New ICC as a defendant. Beyond these undisputed facts, by their own admission and this Court's prior ruling when the involuntary petition against New ICC was challenged, Greenlight did not

(continued...)

Nonpriority Claims, states the Greenlight claims, in the aggregate, total approximately $100,000,000.00. Tab 32 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0256-57. According to the Amended Schedules filed September 25, 2008, Comstar holds a "gap claim," that is, an unsecured priority claim which arose after the commencement of the involuntary case.[22] Section 544(b) permits a trustee to stand in the shoes of a creditor[23] with an allowable claim under §502. Pursuant to §502(f), gap claims are allowable and are treated as if they were incurred prepetition.[24] Thus, a creditor holding a "gap claim," such as Comstar, may be used by the trustee as a §544(b) creditor. According to Amended Schedule E, Comstar holds an unsecured priority claim in the amount of $26,989.80. Tab 27 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0196. With respect to Anixter, New ICC's Amended Schedule F lists Anixter as

---

[21](...continued)
become a creditor of New ICC until 2006."). While acknowledging Greenlight as a creditor, Jeffrey Prosser misstates the appropriate standard for determining when an entity becomes a "creditor." *See* discussion *infra* at note 35 and accompanying text. Furthermore, in finding that Greenlight was the holder of a claim against New ICC, the court's order contained no determination as to *when* Greenlight became a creditor of New ICC despite Jeffrey Prosser's assertion that the court ruled that Greenlight did not become a creditor of New ICC until 2006. In any event, precisely *when* Greenlight became a creditor was not material to the determination, so long as Greenlight qualified as a petitioning creditor.

[22] *See* Tab 27 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0196. Although Amended Schedule E does not provide the date the claim was incurred, Comstar is described as holding a claim "arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief." *Id.* at PB0194-96.

[23] Pursuant to §101(10)(B), an "entity that has a claim against the estate of a kind specified in section...502(f)" is a "creditor."

[24] In his Objection to Summary Judgment, Jeffrey Prosser states that "[a]s a matter of law, a *post-petition* priority creditor, cannot serve as the required §544(b) creditor." Doc. No. 147, at 5 (emphasis added). However, this conclusion is based upon cases involving voluntary filings, which do not address the treatment of gap creditors under §502(f). *Id.* at 3-4. Comstar's claim is treated as a prepetition claim by operation of law. *See* 11 U.S.C. §502(f).

holding a general unsecured claim against New ICC's bankruptcy estate in the amount of $32,701.06. *Id.* at PB0197. Jeffrey Prosser states that "[n]either Comstar nor Anixter has filed a proof of claim." Jeffrey Prosser's Objection to Summary Judgment, Doc. No. 147, at 5. However, pursuant to §1111(a), "[a] proof of claim is deemed filed under §501 of this title for any claim or interest that appears in the schedules filed under §521(1) or §1106(a)(2) of this title, except a claim or interest that is scheduled as disputed, contingent, or unliquidated." Neither claim is listed as disputed, contingent, or unliquidated.[25] Pursuant to §502(a), "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest,...objects." Despite Jeffrey Prosser's challenges to the validity of these claims in his motion for summary judgment, no objection to either claim has been filed. Although the dates on which the claims of Comstar and Anixter arose are not identified in the Amended Schedules, their claims did not have to exist at the time of the transfer of the Palm Beach property to Jeffrey and Dawn Prosser in order for them to be creditors under Florida's fraudulent transfer statute. Future creditors can avoid transfers provided that they plead that the transfer was made with the actual intent to hinder, delay or defraud creditors. *Hyman v. Harrold*, 293 B.R. 791, 794 (Bankr. M.D. Fla. 2003). Therefore, Trustee Springel has

---

[25] Jeffrey Prosser states in his Objection that Trustee Springel amended the Bankruptcy Schedules so that Comstar and Anixter were no longer scheduled as having contingent, unliquidated, and disputed claims. Doc. No. 147, at 4. The columns providing for "the date claim was incurred and consideration for claim" are blank. *Id.* Jeffrey Prosser asserts that there is no basis provided for Comstar's claim. *Id.* at 5. Similarly, he contends that Trustee Springel has not "produced any document to support how it is that on September 25, 2008[,] Anixter suddenly became the holder of an undisputed, liquidated and uncontested, but undocumented and un-filed [*sic*] general unsecured claim." *Id.* at 8. The trustee's duties include the investigation of claims. 11 U.S.C. §1106(a)(3). Neither Anixter nor Comstar, which were given notice of the bankruptcy (*see* Case No. 07-30012, Doc. No. 915), has sought to strike or otherwise remove its claim. No objection to Anixter's or Comstar's claim has been filed. Thus, both Comstar and Anixter have allowable claims which, at this time, are deemed allowed pursuant to §502(a).

identified Greenlight, Comstar, and Anixter as actual creditors with unsecured allowable claims, permitting him to proceed under §544(b).

<u>Badges of Fraud</u>

Although proof of fraud requires proof of intent, defendants in fraudulent transfer cases will not openly admit to being instruments of fraud. *Mejia v. Ruiz*, 985 So.2d 1109, 1113 (Fla. Dist. Ct. App. 2008). For purposes of determining the debtor's intent, the applicable Florida statute provides a non-exclusive list of factors a court should consider. *Woodard v. Stewart*, 280 B.R. 268, 279 (Bankr. M.D. Fla. 2001). Section 726.105(2) of the Florida statute directs courts to consider whether:

(a) The transfer or obligation was to an insider.[26]

(b) The debtor retained possession or control of the property transferred after the transfer.

(c) The transfer or obligation was disclosed or concealed.

(d) Before the transfer was made or the obligation was incurred, the debtor had been sued or threatened with suit.

(e) The transfer was of substantially all the debtor's assets.

(f) The debtor absconded.

(g) The debtor removed or concealed assets.

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

---

[26] Where the debtor is a corporation, an insider includes a director of the debtor, officer of the debtor, person in control of the debtor, and relatives of a director, officer, or person in control of the debtor. Fla. Stat. §726.102(7). Relatives include spouses. §726.102(11). Both Jeffrey and Dawn Prosser are insiders of New ICC.

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Courts are not limited to these factors and should consider all circumstances surrounding the conveyance to determine a debtor's intent. *Woodard*, 280 B.R. at 279. "While a single badge of fraud may amount only to a suspicious circumstance, a combination of badges will justify a finding of fraud." *Meija*, 985 So.2d at 1113. However, despite the existence of badges of fraud, "actual intent may not necessarily be presumed where a debtor had legitimate or independent reasons or purposes for making the transfer." *Woodward,* 280 B.R. at 283. "The proof required to show that a transfer is fraudulent is the preponderance of the evidence standard." *Mejia*, 985 So.2d at 1113.

Trustee Springel contends that Jeffrey Prosser essentially was New ICC, and therefore, Jeffrey Prosser's intent must be imputed to New ICC for purposes of evaluating the transfer.[27] Generally, the acts of a corporate agent are imputed to the corporation. *O'Halloran v. PricewaterhouseCoopers LLP*, 969 So.2d 1039, 1045 (Fla. Dist. Ct. App. 2007). Although an

---

[27] In his Response to Trustee Springel's Motion for Summary Judgment, Trustee Carroll states that the imputation argument is illogical, because "if both Mr. Prosser and the company knew that a Greenlight judgment would be entered against both of them, then the transaction served no fraudulent purpose." Doc. No. 149, at 8. However, the argument fails to acknowledge that the transfer was made to Jeffrey Prosser *and* Dawn Prosser, as husband and wife. The presumption is unrebutted on this record that the property was transferred to them as tenants by the entireties, thereby shielding the property from potential judgment against Jeffrey Prosser, New ICC, or both. *See* note 5 *supra*, and accompanying text. It is not illogical to argue that Jeffrey Prosser, acting for New ICC and on his own behalf, intended to place the property out of reach of both his own creditors and New ICC's creditors.

exception to this general rule exists where a corporate agent acts adversely to the corporation's interest, the exception does not apply where the corporate actor is the alter ego of the corporation. *Id.* Therefore, "[w]here a corporation is wholly dominated by persons engaged in wrongdoing, the corporation has itself become the instrument of wrongdoing." *Id.* At the time of the purchase and transfer, Jeffrey Prosser was an officer and director of New ICC and the sole member of its ultimate parent company.[28] The board members of New ICC acted as advisors to Jeffrey Prosser, and he could replace them at any time. Transcript of 9/9/2008, Exhibit B to Doc. No. 149, Objection/Response of the Chapter 7 Trustee, at 88. With respect to the transfer of the Palm Beach property, he did not seek board approval before or after transferring the property from New ICC to Dawn and himself.[29] Therefore, Jeffrey Prosser was acting as the sole decision maker for the company with respect to the transfer, and his intent should and will be imputed accordingly.

Transfer to an Insider

The parties acknowledge and this court finds, that the transfer of the Palm Beach property to the Prossers constitutes a transfer to insiders under the terms of the Florida statute. *See* Trustee Springel's Motion for Summary Judgment, Doc. No. 141, at ¶ 28; Jeffrey Prosser's Objection to

---

[28] *See* Deposition of Jeffrey Prosser (7/22/2008), Tab 7 of Doc. No. 141, Trustee's Motion for Summary Judgment, at PB0042 ("...when you're a hundred percent private company, you have a board of directors to provide advice and so forth....It is a completely different animal than a public corporation....Since a sole shareholder can do whatever they so desire through unanimous consent....").

[29] *See* Deposition of Michael Prosser (4/25/2008), Tab 18 to Doc. No. 141, Trustee's Motion for Summary Judgment, at PB0104 (asking a board member, who is Jeffrey Prosser's brother, with respect to the board's knowledge of the Palm Beach property, "Q. Would it be fair to say...nothing relating to the Palm Beach house ever came up as an issue? A. Yes"); Transcript of 8/25/2008, Tab 20 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0124 (Testimony of Jeffrey Prosser: "Before the transfer was made, no, I don't recall seeking anyone's approval.").

Springel's Motion for Summary Judgment, Doc. No. 147, at 11.

<u>Disclosed or Concealed Transfer</u>

The witnesses, including Jeffrey Prosser, testified with respect to the transfer of the property to the Prossers from New ICC, that the transaction was not discussed with the board. Jeffrey Prosser stated that he did not seek board approval before transferring the property. Transcript of 8/25/2008, Tab 20 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0124. Jeffrey Prosser's testimony is consistent with the testimony of other board members, John Raynor, Michael Prosser, and Richard Goodwin. Raynor testified that he was not involved in the transfer to the Prossers and did not become aware of the transfer until 2001. Transcript of 9/9/2008, Exhibit A to Doc. No. 157, Reply to Jeffrey J. Prosser, Dawn Prosser, and Trustee Carroll's Responses/Objections/Oppositions, at 90. He further testified that he had no recollection of having discussed the transfer of the property from New ICC to the Prossers at a board meeting prior to the time of the transfer. *Id.* at 91.

Michael Prosser, Debtor's brother, testified that he did not recall the Palm Beach property ever coming up in a board meeting. Deposition of Michael Prosser (4/25/2008), Tab 18 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0104. He stated that he was unaware of a transfer to Jeffrey and Dawn Prosser of a home purchased by New ICC, and he was unaware of any promise by Jeffrey Prosser to pay New ICC in relation to the transfer of the Palm Beach property. *Id.*

According to Richard Goodwin's testimony, he was aware, after the fact, that a home had been purchased, but he never saw a mortgage, promissory note, or any other type of debt instrument in connection with the transaction. Transcript of 9/8/2008, Tab 19 of Doc. No. 141, Trustee

Springel's Motion for Summary Judgment, at PB0115. In addition, the minutes of New ICC's board meetings for the relevant time period do not show a discussion of this transaction. Minutes of 11/5/1999 and 7/17/2000, Tab 16 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0081-91. We find that the transaction was not discussed with or approved by the board.

Although Jeffrey Prosser testified that the board would have become aware of the transfer of the property through the audited financial statements, the relevant audited financial statements themselves are misleading, as the transfer of the Palm Beach property is recorded therein as a transfer only to the stockholder/president in exchange for a promissory note, as opposed to the actual transfer, which was to Jeffrey and Dawn Prosser as husband and wife for no consideration and without any written promise to repay or note signed contemporaneously by anyone, even by Jeffrey Prosser. *See* Audited Financial Statements, Tab 31 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0237; Transcript of 6/11/2008, Tab 4 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0028; Warranty Deed, Tab 12 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0063-64. *See also* notes 5 and 15 *supra* and accompanying text. In addition, the financial statements for the relevant time frame, i.e., the comparative years ended December 31, 2000, and December 31, 1999, were not completed until October 16, 2001,[30] over eighteen months after the transfer was made to the Prossers. *See* Audited Financial Statements, Tab 31 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at

---

[30] Although titled "Consolidated Financial Statements and Report of Independent Certified Public Accountants," the audit for years ended December 31, 2000, and December 31, 1999, was reported in one document. *See* Tab 31 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0218. We refer to "financial statements" to reflect the fact that audits for two years were reported.

PB0222. Therefore, assuming New ICC's board had the financial statements, the board members were provided with false and untimely information regarding the transfer of the property.

The consolidated corporate audited financial statements for years ended December 31, 2000, and December 31, 1999, record the promissory note in Statement G under the heading of "Due from Stockholder/President." Tab 31 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0237. According to the opinion of the accountants who evaluated the financial statements, the company improperly reflected amounts due from the president of the company as assets rather than as a reduction to equity (referred to as "contra-equity"). *Id.* at PB0221. The accountants reported that "because of the significance of departures from accounting principles accepted in the United States of America...the financial statements...do not present fairly, in all material respects, the consolidated financial position of Innovative Communications Corporation [New ICC] and Subsidiaries as of December 31, 2000 and 1999 or the results of their operations or their cash flows for the years then ended in conformity with accounting principles generally accepted in the United States of America." *Id.* at PB0222. In addition, with respect to Note G of the financial statements, the accountants were unable "to obtain sufficient competent evidential matter as to collectibility..." regarding repayment of the obligation by the shareholder. *Id.* at PB0221.

With regard to concealment from creditors, we note that it is undisputed that the promissory note signed by Jeffrey Prosser and the audited financial statements with the disclosure of the transfer were not available to the public. Deposition of John P. Raynor (5/20/2008), Tab 21 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0129. As noted above, even the audited financial statements, created for reliance by third parties to whom they would be presented, inaccurately described the transfer. Audited Financial Statements, Tab 31 to Doc. No. 141, Trustee

Springel's Motion for Summary Judgment, at PB0237.

Other than the recitals contained in the deed, which was recorded, the creditors did not have access to the circumstances surrounding the transfer. Under Florida law, "a recorded document 'is constructive notice to creditors and subsequent purchasers not only of its own existence and contents, but of such other facts as those concerned with it would have learned from the record, if it had been examined, and inquiries suggested by it, duly prosecuted would have disclosed.'" *Mead v. United States*, 374 B.R. 296, 310 (Bankr. M.D. Fla. 2007). As the deed was recorded, the transfer was not concealed. However, the circumstances surrounding the transfer, such as the lack of any consideration paid for a $5.65 million home and the after-the-fact unsecured promissory note provided only by Jeffrey Prosser, were not available to indicate the nature of the transfer. Jeffrey Prosser contends that a prudent person looking at the records would see that a mortgage was not recorded, prompting further inquiries. Transcript of 11/10/2008, Doc. No. 162, at 117-18. Trustee Springel contends it is not reasonable to expect commercial creditors dealing with a commercial corporation to examine residential real property records in the first place. *Id.* at 146-47. The documentary evidence establishes that when mortgages were recorded on May 17, 2000, and on August 4, 2005, the obligors were Jeffrey and Dawn Prosser. *See* Mortgages, Tabs 22, 23, 25 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0134-51, PB0154-73. As a result, an examination of the mortgages would not elucidate the transfer and would further conceal the true nature of the transfer. The court finds that the undisputed facts and documentary evidence establish that sufficient information was not disclosed anywhere that would put creditors on notice of the fraudulent nature of the transaction. Thus, there was nothing on the public record to suggest to a creditor to make an inquiry.

<u>Suit or Threat of Suit Before the Transfer</u>

Prior to the transfer, Jeffrey Prosser and his companies had been targeted with lawsuits by the

former public shareholders of Emerging Communications, Inc. ("Emerging"), now also a debtor,[31]

which were initiated as a result of Mr. Prosser's taking Emerging private. Trustee Springel's Motion

for Summary Judgment, Doc. No. 141, at ¶ 33. The first suit was the Brickell Partners' fiduciary

duty class action, which was commenced in 1998 in the Delaware Chancery Court on behalf of

former public shareholders of Emerging. The Brickell suit was consolidated with the Greenlight

appraisal action filed against Emerging in 1999[32] and the Greenlight fiduciary duty action against

Jeffrey Prosser and New ICC's predecessor in interest (referred to as "Old ICC"[33]), among others,

---

[31] Emerging filed a voluntary bankruptcy petition on July 31, 2006. *See In re Emerging Communications, Inc.,* Case No. 06-30007, Doc. No. 1. Pursuant to the order dated May 17, 2007, Emerging's bankruptcy case is being jointly administered with the bankruptcy case of its corporate parent, Innovative Communication Company, LLC (hereinafter "ICC-LLC"), at case number 06-30008. *See* Case No. 06-30007, Doc. No.678. New ICC is a wholly-owned subsidiary of Emerging. *See* Audited Financial Statements, Tab 31 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment.

[32] *See* Petition for Appraisal, Exhibit to Doc. No. 147, Objection to Springel's Motion for Summary Judgment.

[33] "On December 23, 1998, [New ICC] acquired certain assets of the former Innovative Communications Corporation (IC Corporation) [Old ICC], a subsidiary of ICC Parent, in exchange for 52,000 shares of the Company's Senior Preferred Stock, Series A, with a liquidation value of $1,000 per share pursuant to the terms of a Reorganization Agreement. [New ICC] and IC Corporation were under common ownership prior to acquisition." Consolidated Financial Statements for the Years Ended December 31, 1998 and 1997, Exhibit A to Doc. No. 186, at TT4-1598. In response to the court's order dated April 23, 2009, Doc. No. 185, the parties stipulated to the admission of these financial statements. *See* Chapter 11 Trustee's Filing in Accordance with this Court's Order, Doc. No. 186, at 2; Jeffrey J. Prosser's Filing in Accordance with this Court's Order, Doc. No. 187, at ¶ 2. We note that the characterization of the reorganization in the audited financial statements is misleading. Despite the fact that the statements provide that "certain" assets of Old ICC were acquired by New ICC, in fact, *all* of Old ICC's assets were transferred. *See* Reorganization Agreement, Exhibit A to Exhibit 2 to Involuntary Petition, Case No. 07-30012, Doc. No. 1. In addition, the financial statements fail to

(continued...)

which was filed in 2001 (collectively, "the shareholder litigation"). The shareholder litigation involved claims arising from the same privatization transaction, which occurred in the late 1990s.[34] On January 9, 2006, judgment was entered in favor of Greenlight.

The parties dispute *when* Greenlight became a creditor of New ICC.[35] The timing is significant for purposes of proving a fraudulent transfer, because the transfer must have been made with the intent to defraud either a creditor in existence or in contemplation of a future creditor.[36] The Palm Beach property was transferred by New ICC to the Prossers in 2000. Although this court

---

[33](...continued)
recognize New ICC's assumption of Old ICC's liabilities. *Id. See also* note 38, *infra.*

[34] Transcript of 8/25/2008, Tab 20 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0125-26 (Testimony of Jeffrey Prosser: "Q. ...[I]sn't it true that lawsuits by shareholders were filed relating to the privatization? A. ...[Y]es, there were lawsuits filed. Q. Relating to the privatization transactions back in the late '90s...? A. Yes....Q. And those included Brickel [*sic*] Partners and Greenlight back in 1998, correct? A. Yes, that's correct.").

[35] *See* Trustee Springel's Reply to Jeffrey Prosser, Dawn Prosser, and Trustee Carroll's Responses/Objections/Oppositions, Doc. No. 157, at ¶ 18 (contending that Greenlight's claims arose pre-transfer out of the privatization transaction dating back to 1998, making them "present creditors for the purpose of fraudulent transfer law") and Jeffrey Prosser's Brief in Support of Motion for Summary Judgment, Doc. No. 140, at 9-10 (stating that "[w]hile the Trustee may point to the Greenlight suit in an attempt to support his assertion, that suit wasn't even filed until a year after the transfer. At no time did the suit identify New ICC as a defendant....Greenlight did not become a creditor of New ICC until 2006."). Jeffrey Prosser misstates the appropriate standard for determining whether an entity is a "creditor." For purposes of Florida's fraudulent transfer statute, a "creditor" is a person who has "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Fla. Stat. §726.102(3)-(4). Therefore, Trustee Springel properly focuses on when the claims arose (i.e., in 1998) as opposed to the date of the Greenlight judgment (i.e., in 2006).

[36] *Eurovest, Ltd. v. Segall*, 528 So.2d 482, 483 (Fla. Dist. Ct. App. 1988)("It is immaterial whether the actual fraudulent intent related to existing creditors or was directed exclusively against subsequent creditors.").

previously determined that Greenlight had a prepetition claim against New ICC[37] as the result of the

Delaware Chancery Court judgment, our order contained no determination as to when the claim

arose.[38]  Jeffrey Prosser challenges Trustee Springel's assertion that the transfer was made to avoid

---

[37] *See* Order Granting Greenlight's Motion for Summary Judgment and Entry of Order for Relief Pursuant to 11 U.S.C. §303(h), Fed. R. Bankr. P. 1018 and 7056 and Fed. R. Civ. P. 56, Case No. 07-30012, Doc. No. 72 ("Each of the Greenlight entities is a holder of a claim against New ICC that is not the subject of a bona fide dispute.").  An attorney, purporting to represent New ICC, and several board members including Jeffrey Prosser and John Raynor, sought to appeal, *inter alia,* this court's order dated September 21, 2007, Case No. 07-30012, Doc. No. 60, which placed New ICC into involuntary bankruptcy.  Motion for Leave to Appeal, Civil No. 2007-129, Doc. No. 4.  Greenlight's status as a bona fide creditor of New ICC was contested in that motion for leave to appeal. Exhibit E to Doc. No. 4, at 5-12. The District Court, recognizing that the Chapter 11 Trustee was the only one with the authority to pursue appeals on behalf of New ICC, granted Trustee Springel's motion to dismiss.  Memorandum Opinion dated December 24, 2008, Civil No. 2007-129, Doc. No. 33.

[38] By way of background, we recite a brief corporate history of New ICC which is helpful to understanding Greenlight's claim against New ICC. Although Jeffrey Prosser contends that Greenlight does not have a claim against New ICC, the order finding Greenlight to be "a holder of a claim against New ICC that is not the subject of a bona fide dispute" is final and unappealable.  This corporate history is not part of the summary judgment record, but the material facts are not disputed and this information is provided as background to describe Greenlight's claim against New ICC resulting from Greenlight's judgment against Old ICC. Greenlight's claim against Old ICC arose out of a "going private" transaction of the publicly held shares of Emerging.  Greenlight's Motion for Summary Judgment and Entry of Order for Relief, Case No. 07-30012, Doc. No. 16, at 2 (Although this motion was filed under seal, the events giving rise to Greenlight's claim are a matter of public record and were thoroughly documented in the opinion of the Delaware Chancery Court.) Prior to the privatization, ICC-LLC was the majority shareholder of Emerging.  *See* Exhibit A to Doc. No 37, Case No. 07-30012, at ¶ 5.  Jeffrey Prosser owned 100% of ICC-LLC and sought to obtain the public shares of Emerging.  *Id.* at ¶¶ 8, 124.  This was achieved in two steps, the first of which consisted of an initial tender offer by Old ICC.  *See* Greenlight's Motion for Summary Judgment and Entry of Order for Relief, Case No. 07-30012, Doc. No. 16, at 2 (filed under seal). It was on the basis of the "going private" transaction that Greenlight, a shareholder of Emerging, filed its appraisal action and fiduciary duty action.  *Id* at 3-5.  Subsequent to the privatization of Emerging, Old ICC and Atlantic Tele-Network Co. ("ATN") entered into an agreement pursuant to which ATN purchased Old ICC's assets and assumed Old ICC's liabilities.  *See* Reorganization Agreement, Exhibit A to Exhibit 2 to Involuntary Petition, Case No. 07-30012, Doc. No. 1.  Subsequently, Old ICC dissolved and ATN changed its name to Innovative Communication Corporation, which

(continued...)

the liability from the litigation regarding the privatization on two bases. First, Jeffrey Prosser

contends that, because the Greenlight fiduciary duty litigation was not commenced until 2001, which

was after the transfer, there was no threat of liability at the time of, and no creditor to be defrauded

by, the transfer. However, Jeffrey Prosser incorrectly asserts that there is no claim until litigation is

commenced. Florida fraudulent transfer law is not so restrictive. *See supra* note 35. Jeffrey Prosser

acknowledges that the Brickell and Greenlight litigation related back to a transaction which took

place in the 1990s. *See supra* note 34. Therefore, the claim arose prior to the transfer, and

Greenlight was a creditor in existence at the time of the transfer. Furthermore, Jeffrey Prosser

testified that he has been aware of the existence of the claims since 1998.[39] By focusing on the date

the Greenlight litigation was commenced in the Delaware Chancery Court and the date judgment

was entered by that court, Jeffrey Prosser attempts to draw this court's attention away from the fact

that he knew Greenlight's claims existed at the time of the transfer of the Palm Beach property.

Similarly, Jeffrey Prosser contends that, because New ICC was not a named defendant in the

---

[38](...continued)
we refer to as "New ICC." *See* Answer to Involuntary Petition, Case No. 07-30012, Doc. No.
12, at ¶ 3. Jeffrey Prosser's recasting of his corporate entities in this fashion specifically
transferred Old ICC's *assets and liabilities* (including what became the Greenlight judgment)
into ATN, which changed its name to Innovative Communication Corporation, "New ICC."
*See also* note 43 *infra* and accompanying text. Thus, the only entity left with assets and liabilities
of Old ICC is New ICC. We note that "[t]he successor corporation does inherit liability where
(1) the purchaser expressly or implicitly agrees to assume liability, (2) the purchase is a de facto
consolidation or merger, (3) the purchaser is a mere continuation of the seller, or (4) the transfer
of assets is for the 'fraudulent purpose of escaping liability.'" *Raytech Corp. v. White*, 54 F.3d
187, 192, n.6 (3d Cir. 1995). Here, the successor, "New ICC," assumed liabilities.

[39] Transcript of 8/25/2008, Tab 20 to Doc. No. 141, Trustee Springel's Motion for
Summary Judgment, at PB0126 ("Q. And you've known about the shareholder claim since 1998,
correct? A. Whatever the date. Yes, there was a letter filed. I don't know when the actual
lawsuits were filed. Q. And you've known about those lawsuits and the claims asserted since the
time that they were filed; is that a fair statement? A. Yes.").

privatization litigation, Greenlight had no claim against New ICC at the time of the transfer. Transcript of 11/10/2008, Doc. No. 162, at 107.[40] Again, this interpretation of what constitutes a claim ignores the broad definition provided in Florida's fraudulent transfer statute. The argument fails to acknowledge New ICC's liability as Old ICC's successor in interest, upon which this court's order dated September 27, 2007, finding Greenlight to be the holder of a claim against New ICC, is based. *See supra* at notes 37 and 38 and accompanying text. Furthermore, it is undisputed that Jeffrey Prosser and New ICC's board were aware of Greenlight's claims and that the shareholder litigation was discussed by New ICC's board before and after the transfer. *See* Minutes of 11/5/1999 and 7/17/2000 Board Meetings, Tab 16 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0081, PB0086. Jeffrey Prosser contends that, based upon representations made by counsel for New ICC to the board, New ICC's potential for liability from the shareholder litigation was small. Transcript of 11/10/2008, Doc. No. 162, at 109-10. Notwithstanding the characterization by New ICC's counsel, the litigation obviously presented enough of a concern to warrant discussion by the board, as recorded in the minutes of the meetings. The claims advanced in the shareholder litigation presented a recognized threat to New ICC, at the time the transfer was made. Based on the foregoing, Trustee Springel appropriately identified Greenlight as a creditor to whom the intent to hinder, delay, or defraud was directed.

Despite the argument that the board may not have been told, and thus may not have

---

[40] *See also* Jeffrey Prosser's Brief in Support of Motion for Summary Judgment, Doc. No. 140, at 9-10 wherein Mr. Prosser contends: "While the Trustee may point to the Greenlight suit in an attempt to support his assertion, that suit wasn't even filed until a year after the transfer. At no time did that suit identify New ICC as a defendant....Greenlight did not become a creditor of New ICC until 2006." In reality, Greenlight's claim was liquidated and Mr. Prosser's liability was fixed by the judgment entered in 2006. The claim clearly arose prior to the litigation and entry of judgment after litigation based on the claim.

perceived, the litigation as a serious threat to New ICC, Jeffrey Prosser's intent, which is imputed to New ICC, must be examined. By transferring New ICC's property into property owned by Jeffrey Prosser and his wife as tenants by the entirety,[41] New ICC, acting through Jeffrey Prosser as the signatory on the deed, was able to shield the property from the possibility of an adverse judgment in the shareholder litigation against the ICC defendant entities, New ICC, as the successor of Old ICC, and Jeffrey Prosser himself. According to the consolidated financial statements as reflected in the board's minutes of November 5, 1999, and July 17, 2000, the businesses and New ICC were undergoing financial losses when the transfer occurred.[42] Therefore, at a time when it was more

---

[41] *See* note 5 *supra* and accompanying text.

[42] *Compare* Minutes of 11/5/1999, Tab 16 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0082 (showing "total revenues were $61,331,000; total expenses were $46,295,000, Income from operations was $15,036,000 and income expenses were $9,102,000 with Income before taxes of $5,9324,000 [*sic*] and Net income after tax and minority interest of $2,887,000 ") *with* Minutes of 7/17/2000, Tab 16 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0089 (showing "total revenues were $60.4 million; total operating expenses were $51.0 million; income from operations were $9.4 million and other income expenses showed a loss of $12.1 million. Income before taxes reflected a loss of $2.6 million, and Net Income showed a loss of $2.1 million"). The financial statements are on a consolidated basis, as New ICC is a holding company, with virtually no income of its own.

 Note B to New ICC's consolidated corporate audited financial statements for years ended December 31, 2000, and December 31, 1999, states, "The accompanying financial statements contemplate continuation of the Company as a going concern. The Company has sustained significant losses from operations in recent years and at December 31, 2000, the Company was in non-compliance with certain loan covenants that could have resulted in the entire amount of the debt to the Rural Telephone Finance Cooperative ("RTFC") becoming immediately due and payable." Tab 31 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0233. The audited financial statements refer to New ICC as "the Company." *See Id.* at PB0228-29

 An audit is a review of a company's financial statements, and "[a]n 'unqualified' or 'clean' audit opinion is the highest level of assurance that an auditor can give on an organization's financial statements. Accountants will 'qualify' their opinion [*sic*] where discrepancies are identified in a client's financial statements." *In re IKON Office Solutions, Inc.*, 277 F.3d 658, 664, n.4 (3d Cir. 2002). "[T]he objective of the ordinary examination of financial

(continued...)

difficult for the company to meet expenses and while it was involved in litigation,[43] Jeffrey Prosser

caused the transfer of substantial money and the property purchased with it out of New ICC and to

himself and his wife.

---

[42](...continued)
statements by the independent auditor is the expression of an opinion on the fairness with which they present financial position, results of operations, and changes in financial position in conformity with generally accepted accounting principles." *Id.* at 673. "An audit does not guarantee that a client's accounts and financial statements are correct any more than a sanguine medical diagnosis guarantees well-being...." *Id.* The financial statements are based upon information provided by management of New ICC, under the direction and control of Mr. Prosser, regarding corporate affairs, and the auditors were unable to provide a "clean" audit opinion of the financial statements for the years ended December 31, 2000 and 1999. Tab 31 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0221-PB0222. *See also* note 15 *supra.*

[43] Note N of these statements provides, "The Company is a named defendant in a Fiduciary Duty Action which is currently underway in Delaware Chancery Court for alleged breach of fiduciary duty in regard to the approval of the 1998 offer made to purchase the outstanding shares of EmCom ["Emerging"]. This claim is part of a consolidated action with the Appraisal Action against EmCom and Civil Action against ICC's President. The Company plans to vigorously defend these actions....The minimum liability to EmCom would be $7.8 million plus prejudgment and post judgment interest. ICC and/or certain ICC directors could be liable for this balance if the petitioner wins the Fiduciary Duty Action." *Id.* at PB0250. The terms "Company" and "ICC"are used throughout the audited financial statements to refer to New ICC. *Id.* at PB0229 ("On December 23, 1998, the Company acquired certain assets of the former Innovative Communications Corporation (IC Corporation)...pursuant to the terms of a Reorganization Agreement.") *See also Id.* at PB0228 ("Innovative Communications Corporation and Subsidiaries (the "Company" or "ICC")....is a wholly-owned subsidiary of Emerging Communications, Inc. ("EmCom"), Innovative Communications Company LLC ("Parent") is the ultimate holding Company of EmCom.") Although characterizing what we refer to in this opinion as "New ICC" as the "named defendant" where, in fact, New ICC's predecessor "Old ICC" was actually the named party in this litigation, Note N clearly contemplates New ICC's potential liability as a result of the pending litigation.

<u>Consideration Received</u>[44]

Initially, Jeffrey Prosser claimed that he and Dawn actually purchased the Palm Beach property, which was "mistakenly" put in New ICC's name rather than his and Dawn's names. Transcript of 8/25/2008, Tab 20 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0121-PB0122. However, Jeffrey Prosser later admitted that the home was actually purchased by New ICC. *Id.* at PB0121.

After acknowledging that New ICC was the true purchaser of the property, Jeffrey Prosser then testified twice, with inconsistent statements, in his attempt to show that consideration was given for the property. The first involved Jeffrey Prosser's assertion in deposition that consideration was provided in the form of a promissory note.[45] Approximately thirteen months after the transfer to the Prossers, Jeffrey Prosser, but not Dawn Prosser, executed an unsecured note in favor of New ICC for the purchase price of the property. Promissory Note, Tab 13 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment. Considering the time which elapsed between the transfer, the

---

[44] The deed provides that New ICC transferred the property to the Prossers "for and in consideration of the sum of Ten and no/100ths Dollars ($10.00) and other good and valuable considerations [*sic*] to said Grantor...." Warranty Deed, Tab 12 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0063-PB0064. Trustee Carroll cites to *Kingsland & Henry v. Godbold* arguing that "sufficiency of consideration is not a relevant basis upon which to void a deed." 456 So.2d 501, 502 (Fla Dist. Ct. App. 1984). However, that case was not a fraudulent conveyance case, but rather addressed the conveyance of the same property to two different purchasers. Sufficiency of consideration is one of the badges of fraud to be considered according to Florida's statute. The ten dollars stated in the deed and "other [unidentified] good and valuable considerations [*sic*]" is far from reasonably equivalent to property worth $5.65 million.

[45] *See* Deposition of Jeffrey Prosser (7/22/2008), Tab 7 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0037 ("Q. And you didn't provide any capital, any funds in return for that transfer, correct? A. I believe at the time we provided a note. Q. At the time? A. There was a note provided......A. Well, I don't recall the exact time.").

execution of the note and the terms of the note, Trustee Springel asserts that the note was simply a belated attempt to give the illusion that consideration had been provided and based on the undisputed facts, we agree that the note served, belatedly, to document the transfer but did nothing to provide consideration for it. Certainly, the board was not consulted and did not approve of either the note or of its allegedly retroactive nature.[46]

Second, Jeffrey Prosser claims that the receipt of the property was income to him as reflected in the contra-equity account, and full consideration was paid through the services he provided to the company. *See* Transcript of 11/10/2008, Doc. No. 162, at 120; Transcript of 6/11/2008, Exhibit C to Doc. No. 149, Objection/Response of the Chapter 7 Trustee, at 223. Jeffrey Prosser has not explained how the transfer resulted in a $5.65 million debt he owed to New ICC, as evidenced by the unsecured note, and, at the same time, how the transfer constituted income to him.[47] "By any stretch, a loan, regardless of the size, is not income." *Murphy v. O'Donnell*, 474 F.3d 143, 150 (4th Cir. 2007). In addition, Jeffrey Prosser, a cash basis, calendar year taxpayer, who received this transfer in April of 2000, has failed to identify the receipt of $5.65 million in income or imputed income attributable to the purchase price of this property in 2000 on his tax returns. *See* Transcript of 9/9/2008, Exhibit B to Doc. No. 157, Reply to Jeffrey J. Prosser, Dawn Prosser, and Trustee Carroll's Responses/Objections/Oppositions, at 193-201. Examination of Jeffrey Prosser's tax

---

[46] The board knew nothing of this event until at least a period that was eighteen months later when the audited consolidated financial statements were prepared and first reviewed with the board. *See* discussion of "Disclosed or Concealed Transfer" at *supra* pp. 21-25.

[47] *See* Deposition of Jeffrey Prosser (7/22/2008), Tab 7 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0042 ("...as far as payment for the note, like a lot of income from the company, it was run through the contra-equity account and taken as income on our tax return, and so...it was paid").

returns for any year from 1998 through 2006 fails to support his assertions that he treated receipt of the property as income.[48]  Moreover, this construction of the transaction is wholly at odds with the audited financial statements that identify the note as consideration for the transfer.

We note that Jeffrey Prosser did not list or disclose the obligation reflected by the note in his bankruptcy schedules. *See* Transcript of 11/10/2008, Doc. No. 162, at 175; Amended Schedules, Case No. 06-30009, Doc. No. 1062 (We take judicial notice of Jeffrey Prosser's bankruptcy schedules.)  The obligation reflected in the note was due, in full, on April 10, 2007, a date more than eight months postpetition and, therefore, is required to have been listed as an unsecured claim.  *See* Promissory Note, Tab 13 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0065; 11 U.S.C. §521(a)(1)(B)(i) (requiring the debtor to file a schedule of assets and liabilities).[49]  Despite Jeffrey Prosser's testimony he considered the debt to have been repaid, the evidence establishes that the loan was not repaid by Jeffrey Prosser.[50]  No documents of any type establish any repayment by Jeffrey Prosser whatsoever**.**  The testimony based on the corporate books

---

[48]  The parties stipulated to the admission of the Prossers' joint tax returns for the years 1998 through 2006, which were filed as Exhibits JP1-JP9 in the Exemption Trial in Case No. 06-30009.  *See* Chapter 11 Trustee's Filing in Accordance with this Court's Order, Doc. No. 186, at 2; Jeffrey J. Prosser's Filing in Accordance with this Court's Order, Doc. No. 187, at ¶ 1.

[49]  Jeffrey Prosser likewise did not list the Palm Beach property as something he held for the benefit of New ICC.

[50]  *Compare* Deposition of Jeffrey Prosser (7/22/2008), Tab 7 to Doc. No 141, Trustee Springel's Motion for Summary Judgment, at PB0044 ("Q. And you claim now that that loan has been paid off in full? A. I've always claimed the loan was paid off.") *with* Transcript of 6/11/2008, Tab 4 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0026 (Testimony of Ingrid Christian, accountant/custodian of records retained by Trustee Springel: "Q. Based on your review of the books and records [of ICC]...did Jeffrey Prosser, who executed the promissory note...ever make a cash payment of either principal or interest on that promissory note to ICC?  A. Not to my knowledge.").

and records supports the lack of payments by him.[51]  Moreover, Jeffrey Prosser's original assertion

that he treated the transfer as income indicates that he never had an intent to pay the obligation

evidenced in the promissory note, supporting the Trustee's position that the note was not

representative of any consideration for the transfer.[52]  Jeffrey Prosser's contradictory theories and

---

[51]*See* Transcript of 6/11/2008, Tab 4 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0026 (Testimony of Ingrid Christian, accountant/custodian of records retained by Trustee Springel: "Q. Based on your review of the books and records [of ICC]...did Jeffrey Prosser, who executed the promissory note...ever make a cash payment of either principal or interest on that promissory note to ICC?  A. Not to my knowledge."); Declaration of Byron Smyl, Tab 1 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0002 ("According to New ICC's records, Jeff Prosser made no payments under the Prosser Note.").

[52] In furtherance of the fraud, Jeffrey Prosser used a loan, obtained through Vitelco (a subsidiary of New ICC) to reduce his obligation under the promissory note to New ICC, while creating a debt which New ICC was forced to repay.  *See* Deposition of Ingrid Christian, Tab 8, to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0054-55 (Q. ..."[T]here is a listing of payments with regard to Global Bank of Commerce Limited. What is that? .... A. ...Vitelco entered into a loan with Global Bank.  But Jeff Prosser, I believe, is the one who...negotiated the loan.....but the loan, specifically is between Vitelco and Global Bank. However, the funds for the Global Bank loan were never received by Vitelco, they were received into New ICC's bank account.  Nor did Vitelco ever reflect the loan as outstanding on its books. What happened was,...ICC is paying for the interest and principal payments on this Global Bank loan for funds that were received into New ICC's account.  Q. ...The loan was taken out by Vitelco, correct?  A. The documents would indicate that the loan was taken out by Vitelco, correct.  Q. And then the money, the proceeds of the loan were then put into ICC?  A. That's correct.  Q. And what did ICC do with it?.... A. ....When the cash was received for these loan proceeds, the cash was received into the ICC operating account.  However, the offset to that, meaning you increased the cash, the offset was a reduction to Mr. Prosser's receivables that he had entered into with New ICC for the transfer of the...Palm Beach property.  BY MR CRAIG: Q. But the money went into ICC?  A. The money went into ICC's account, but it also reduced the debt that Jeff Prosser had to the company for the transfer of the 5.6 million dollar property. Q. So there was a bookkeeping entry modifying Mr. Prosser's obligation?  A. Reducing it, yes. Q. But regardless of that, the money actually went into ICC?  A. Yes....Reducing his obligation by three million dollars... [Question by] MR. ISRAEL: ....Did that transaction involve New ICC using its own money to pay back an obligation that New ICC lent to begin with?  In other words, is that really what happened there? The money went out from New ICC and then New ICC used its money to pay back - THE WITNESS: Yes.") Therefore, prior to the Global Bank loan, New ICC was owed $5.65 million plus interest.  After the loan, New ICC was owed only $2.65

(continued...)

35

testimony are not supported by the record and cannot be reconciled with the actual facts other than as self-serving efforts to defeat the Trustee's actions with no corroborative evidence.

Totality of the Circumstances

Beyond the enumerated badges of fraud, the circumstances surrounding the transaction must be considered. *Woodard v. Stewart*, 280 B.R. 268, 279 (Bankr. M.D. Fla. 2001). In support of his claim that the transfer was inconsistent with traditional transactions concerning the purchase and sale of residential property, Trustee Springel asserts: "(i) Jeff Prosser signed the Warranty Deed on his own behalf as the transferee of the property *and* on New ICC's behalf as its President, sole shareholder and the transferor of the property; (ii) Jeff Prosser *alone* executed a note thirteen months *after* the time he had caused the transfer of the Palm Beach Property to himself and his wife; (iii) the note provided for no periodic principal or interest payments, only a balloon payment seven years later; and (iv) Jeff and Dawn Prosser did not provide New ICC a mortgage or any form of security." Reply to Jeffrey J. Prosser, Dawn Prosser, and Trustee Carroll's Responses/Objections/Oppositions, Doc. No. 157, at ¶ 8. The evidence supports Trustee Springel's contentions. The totality of the evidence and the undisputed material facts prove numerous badges of fraud. The court concludes from those facts that the transfer was made with fraudulent intent to hinder, delay, and defraud

---

[52](...continued)
million and it owed $3 million plus interest to Global Bank. Thus, where New ICC previously had an asset, the loan created a liability.

    In other words, the evidence established that Jeffrey Prosser caused Vitelco to take out a $3 million loan at interest. Rather than putting those funds into Vitelco, however, Jeffrey Prosser caused the funds to be put into New ICC, caused a bookkeeping entry to be made that said the funds were a reduction of his debt to New ICC, and had New ICC make the principal and interest payments on Vitelco's obligation to the bank. The record is devoid of evidence that Prosser himself made a single payment on either the debt to New ICC for the house or on the Global Bank loan taken out by Vitelco but paid by New ICC.

creditors.

<u>Legitimate Purpose</u>

"Even where traditional 'badges of fraud' may be present, actual intent may not necessarily be presumed where a debtor had a legitimate or independent reason or purpose for making the transfer." *Woodard*, 280 B.R. at 283. Here, the material facts are not in dispute, but Jeffrey Prosser advances a business purpose for the transfer. According to the testimony of John Raynor, the purchase of the property was in relation to New ICC's move of its corporate headquarters from the Virgin Islands to Florida and the company's housing allowance and compensation for its employees.[53] Assuming for the purposes of this Motion that the corporation had a legitimate business purpose in providing a housing allowance to every or virtually every officer, there is no credible testimony to establish a legitimate corporate purpose for *this* transaction, which provided Jeffrey and Dawn Prosser with a $5.65 million property and payment of the maintenance, taxes, insurance, and furnishings associated with it. *See* Deposition of Jeffrey J. Prosser (7/22/2008), Tab 7 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0043 ("Q. New ICC paid to renovate [the Palm Beach property] and furnish it and decorate it, correct? A. They certainly provided funds towards that, yes. Q. And New ICC paid all the property taxes and insurance, correct, over the last eight years? A. Well, again, you classify it as that. They certainly were the funding source. It was run through the income account, through the contra-equity account.")

---

[53] Transcript of 9/8/2008, Exhibit A to Doc. No. 149, Objection/Response of the Chapter 7 Trustee, at 237-38 ("Q. What was your understanding of why the company was going to be purchasing a home? A. ...[T]he company didn't purchase homes for a lot of their officers, but the company gave housing allowances and similar indirect compensation to virtually every officers [*sic*]."). In fact, there was no testimony or evidence that any other officer was given a house or a housing allowance even remotely comparable to the $5.65 million Palm Beach property transferred to the Prossers.

Moreover, the board was aware of the housing allowances but knew nothing of this transfer until well after it had been accomplished. *See* discussion in text at pp. 21-23, *supra*. *See also* Transcript of 9/8/2008, Exhibit A to Doc. No. 149, Objection/Response of the Chapter 7 Trustee, at 237-38 (John Raynor's testimony regarding the company's provision of housing allowances); Transcript of 8/25/2008, Tab 20 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0124 (Jeffrey Prosser's testimony that he did not seek board approval of the transfer).

Trustee Springel met the burden of proof by introducing credible evidence of numerous badges of fraud and the totality of circumstances surrounding the transfer of the Palm Beach property that establish an intent to fraudulently transfer the property. In fraud cases, summary judgment will rarely be available. *Laboratory Corporation of America v. Professional Recovery Network*, 813 So.2d 266, 271 (Fla. Dist. Ct. App. 2002). However, despite the heavy burden on summary judgment, "[t]he existence of badges of fraud create a prima facie case and raise a rebuttable presumption that the transaction is void." *Nationsbank, N.A. v. Coastal Utilities, Inc.,* 814 So. 2d 1227, 1230-31 (Fla. Dist. Ct. App. 2002). Where the defendants have not established sufficient facts to rebut the presumption of a fraudulent transfer, summary judgment is appropriate.[54] Here, while not disputing the facts regarding the transfer, Jeffrey Prosser has proffered as an explanation to how there was consideration provided for the Palm Beach property only his own inconsistent and contradictory testimony. While first claiming that the property was titled in New ICC's name in error, he later reversed that position and, instead, testified that he recognized the

---

[54] *See Amjad Munim, M.D., P.A. v. Azar,* 648 So.2d 145, 153 (Fla. Dist. Ct. App. 1994)("While recognizing that summary judgments are rarely countenanced in fraud cases, the uncontradicted facts in this case point to only one logical conclusion – that the transfer was fraudulent. A creditor may prove a fraudulent conveyance by establishing a prima facie case that is unrebutted, or by demonstrating actual fraudulent intent.").

$5.65 million as income and later changed course again and testified instead that the transaction was a loan that he repaid. The contradictory statements, none of which comport with the exhibits and testimony of other witnesses, are simply an attempt to dispute the fact that no consideration was provided for the transfer.[55] Thus, they do not present a dispute of a material fact. The facts are that the house was transferred to the Prossers for no consideration at a time when creditors were raising claims against the corporate entities and Jeffrey Prosser and the consolidated entities' financial position was deteriorating. The transfer was clearly made to insiders at a time when Jeffrey Prosser's companies were incurring losses, and when they and he were facing potential liability from the claims which arose in association with the privatization.[56] The record establishes that there are no material facts in dispute as to this issue and no legitimate purpose existed for the transfer. Therefore, this court recommends summary judgment in favor of Trustee Springel be granted as Defendants have failed to offer a credible and innocent explanation for the conveyances. *Stoecklin v. United States*, No. 89-182-Civ-OC-16, 1995 U.S. Dist. LEXIS 19979, *17 (M.D. Fla. Nov. 17, 1995) ("To avoid summary judgment the debtor must offer an innocent explanation for any of the asserted badges of fraud.") *See also* Discussion of Dawn Prosser's Liability at pp. 46-48.

For these reasons, we recommend that Trustee Springel's Motion for Summary Judgment be granted on Count Two of the Complaint.

---

[55] *Cf. Amjad Munim,* 648 So.2d at 151 (refusing to find that "belated, unsubstantiated affidavits, which attempt to contradict the sworn deposition testimony..., raise a genuine issue of material fact in light of the other uncontroverted facts").

[56] *See* Minutes of 11/5/1999 Board Meeting, Tab 16 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0081 (discussing the status of the Greenlight litigation).

Count Four of Trustee Springel's Complaint: Disallowance of Claims

Section 502(d) provides for disallowance of "any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title."  The purpose of §502(d) is to ensure compliance with judicial orders.  *Logan v. Credit General Insurance Co.*, 331 B.R. 580, 587 (Bankr. D. Del. 2005).  Application of §502(d) is not triggered until the trustee successfully prosecutes an avoidance action.  *Marketing Resources International Corp. v. PTC Corp.,* 35 B.R. 353, 356 (Bankr. E.D. Pa. 1984).  Then, if the party refuses to comply with the judgment, the court must disallow the party's claim pursuant to §502(d).  *Id.*

Trustee Springel seeks the entry of an order disallowing any claim of Jeffrey Prosser, Dawn Prosser, and/or Trustee Carroll against the New ICC Estate, unless the Palm Beach property is immediately returned. According to the claims register, neither of the Prossers have filed claims against New ICC.  They claim an ownership interest but also have filed no proofs of interest.  At this point, therefore, there is no claim of the Prossers to allow or disallow.

Trustee Carroll filed Claim No. 78 in support of any existing or future claims of Jeffrey Prosser against New ICC.  However, it is premature to disallow Trustee Carroll's claim.  There has been no failure to comply with a judgment to warrant application of §502(d) at this point.

Thus, Summary Judgment should be denied without prejudice on Count Four.

Count Five of Trustee Springel's Complaint: Unjust Enrichment and Constructive Trust

"The imposition of a constructive trust is governed by applicable state law...." *Skilled Nursing Professional Services v. Sacred Heart Hospital,* 175 B.R. 543, 554 (Bankr. E.D. Pa. 1994). "A constructive trust is one raised by equity in respect to property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it." *Provence v. Palm Beach Taverns*, 676 So.2d 1022, 1025 (Fla. Dist. Ct. App. 1996). The purpose of a constructive trust is two-fold: restoration of property to the rightful owner and prevention of unjust enrichment. *Id.* In order to impose a constructive trust, "there must be (1) a promise, express or implied, (2) transfer of the property and reliance thereon, (3) a confidential relationship and (4) unjust enrichment." *Id.* Through the imposition of a constructive trust, a court of equity can order the transfer of title to the true owner. *Great-West Life & Annuity Insurance Co. v. Knudson,* 534 U.S. 204, 213 (2002).

The fraudulent nature of the transfer of the Palm Beach property has been established. Despite the court's finding that Jeffrey Prosser had no intention to repay New ICC at the time of the transfer or any time thereafter, a promise to pay may be implied by law. *Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co.,* 695 So. 2d 383, 386 (Fla. Dist. Ct. App. 1997). "A contract implied in law is a legal fiction, an obligation created by the law without regard to the parties' expression of assent by their words or conduct." *Id.* The elements for establishing a cause of action for a quasi contract are the same as those for establishing unjust enrichment: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *See Id.; Hillman Construction Corp. v. Wainer,* 636 So. 2d 576, 577 (Fla. Dist. Ct. App. 1994). New ICC,

acting through Jeffrey Prosser, transferred the Palm Beach property to the Prossers. There is no dispute that Jeffrey and Dawn Prosser were aware of the transfer of this property to them: they retained it, used it as a home, and took out the equity created in it by New ICC through mortgages in their individual names. The court finds that it is inequitable for the Prossers to retain the property, which was fraudulently transferred to them. The transfer was made to insiders of New ICC and resulted in the unjust enrichment of the Prossers, who received the property without appropriate consideration. The transfer is avoidable, and imposition of a constructive trust over the property itself is appropriate relief.

Therefore, we recommend that a constructive trust be imposed on the Palm Beach property pursuant to Count Five of the Complaint.

Count Six of Trustee Springel's Complaint: Demand for Accounting

Trustee Springel seeks an accounting with respect to the $5 million Bank of America mortgage loan proceeds the Prossers obtained using the Palm Beach property as collateral.[57] However, Trustee Springel has not identified the applicable legal standard as to when an accounting is appropriate or what facts he is relying on to support the request.

Thus, summary judgment on Count Six, requesting an accounting of the loan proceeds, should be denied at this time.

---

[57] *See* Transcript of 8/25/2008, Tab 20 to Doc. No. 141, Trustee Springel's Motion for Summary Judgment, at PB0122-23 (Testimony of Jeffrey Prosser: "Q. And after [the Palm Beach property] was purchased by New ICC you and Dawn took out several credit facilities with Bank of America, collateralized by that house, right? A. Well, after the home was, if it's not my mistake, after the home was transferred into Dawn and my name, then we took out a loan, yes. Q. And there were three credit facilities from Bank of America on that house, correct? A. Over a period of years, yes, I think that's correct. Q. Not a penny of any one of those three, of the proceeds from any one of those three credit facilities, went to pay back the company; isn't that true? A. Not a penny of the proceeds of those loans went back. No, that's true.").

<u>Count Seven of Trustee Springel's Complaint: To Recover from the Prossers Attorneys' Fees,</u>

<u>Interests, and Costs</u>

In his First Amended Complaint, Trustee Springel states that he is entitled to recover from the Prossers "his respective attorneys' fees and costs and to an award of interest from the date on which the transactions were made pursuant to sections 544, 549, and 550 of the Bankruptcy Code, other federal laws, all applicable state laws (including sections 5001 and 5004 of the New York Civil Practice Law and Rules[58]), and other applicable law." Doc. No. 109, at 13. Trustee Springel has not provided a statutory basis for an award of attorneys' fees and costs,[59] and Florida's Fraudulent Transfers statute does not provide for attorneys' fees or costs. Furthermore, Trustee Springel has not provided a reason, such as bad faith or harassment, to warrant departure from the "American Rule," which generally does not permit recovery of attorneys' fees by the prevailing party. *Northwestern Corp. v. Magten Asset Management Corp.*, 326 B.R. 519, 524 (Bankr. D. Del. 2005). With respect to costs, "Rule 7054(b) provides that in an adversary proceeding a '[bankruptcy court] *may* allow costs to the prevailing party except when a statute...or these rules provides otherwise.'...It is clear an award of costs under Rule 7054(b) is discretionary." *Id.* at 529 (citations omitted). Trustee Springel's counsel can be compensated from estate assets, and Trustee Springel can recoup his costs from estate proceeds. *See* 11 U.S.C. §330.

With regard to Trustee Springel's claim to prejudgment interest, the Bankruptcy Code does not include a reference to prejudgment interest. *Hechinger Investment Company v. Universal Forest*

---

[58] New York law is not applicable. See discussion of applicable law *supra* at pp. 6-7.

[59] *Cf. Giuliano v. U.S. Nursing Corp.,* 339 B.R. 570, 578-79 (Bankr. D. Del. 2006) ("[T]here is no statutory basis for the Trustee's request for attorneys' fees and costs.").

*Products*, 489 F.3d 568, 579 (3d Cir. 2007). However, "courts have relied on the word 'value' in §550(a) as authorizing an interest award." *Id.*[60] Section 550(a) provides the trustee with the ability to "recover, for the benefit of the estate, the property transferred, or, if the court so orders, the *value* of such property...." (emphasis added). Trustee Springel is seeking return of the property or, in the alternative, payment of the fair market value of the property. Trustee Springel's Motion for Summary Judgment, Doc. No. 141, at 21. It is within the court's discretion to decide which remedy is appropriate. *Official Committee of Asbestos Claimants of G-I Holdings, Inc. v. Building Materials Corp.*, 338 B.R. 232, 250 (Bankr. D.N.J. 2006). Courts have considered several factors in making this determination: whether the value of the property is contested, whether the value of the property is readily determinable, whether the value has diminished, and whether a monetary award would work a savings to the estate. *Id.* at 251. Here, the value of the property has not diminished. In fact, Trustee Springel states in his complaint that "[t]he current value of the Palm Beach Property exceeds $9 million." Doc. No. 109, at ¶ 24. Both Jeffrey and Dawn Prosser admit that the estimated value of the Palm Beach property is $8.7 million or greater. *See* Jeffrey Prosser's Answer to First Amended Complaint, Doc. No. 125, ¶ 24; Dawn Prosser's Answer to First Amended Complaint, Doc. No. 126, ¶ 27. Return of the property is appropriate. Therefore, an award of prejudgment interest, as requested in Count Seven of the Complaint, does not apply at this time as the property itself, rather than the value of the property, should be ordered.

We recommend that Summary Judgment on Count Seven be denied without prejudice.

---

[60] Although the court was addressing preference claims in *Hechinger*, it looked to the language of §550, which also applies to transfers avoided under §544, for authorization to award prejudgment interest. 489 F.3d at 579.

Count Eight of Trustee Springel's Complaint: Declaratory Relief that Carroll Has No Entitlement to the Palm Beach Property

The Chapter 7 Trustee asserts that he is entitled to the Palm Beach property.[61]  The Chapter 11 Trustee disputes that claim to entitlement inasmuch as he contends that the property belongs to New ICC's estate.  *See* Trustee Springel's First Amended Complaint, Doc. No. 109, at ¶56. Pursuant to §541(a)(1), the bankruptcy estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case."  Section 541(d) explains that the "language of (a) does not include property that the debtor does not hold in his own right."  *Mid-Atlantic Supply, Inc. v. Three Rivers Aluminum Co.*, 790 F.2d 1121, 1124 (4th Cir. 1986).  Section 541(d) provides, "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest...becomes property of the estate...only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."  The trustee takes no greater rights than the debtor himself had.  *Mid-Atlantic*, 790 F.2d at 1124.  "[I]f a trust, whether express, statutory, or constructive, is established over property in the possession of the trustee or debtor in possession, the 'sole permissible administrative act' of the trustee or debtor in possession is to pay over or endorse over the property to the beneficiary or beneficiaries of the trust."  *Id.* at 1126.  In this case, a constructive trust should be imposed in favor of the chapter 11 estate of New ICC.  As a result, Jeffrey and Dawn Prosser hold only bare legal title.

---

[61]*See* Chapter 7 Trustee's Answer with Affirmative Defenses to Chapter 11 Trustee's First Amended Complaint, Doc. No. 119, at ¶56 ("The Chapter 7 Trustee admits only that the Palm Beach Property is property of the estate of Jeff Prosser, and thus, the Chapter 7 Trustee is entitled to ownership of the Palm Beach Property. To the extent that the Chapter 11 Trustee has a claim for fraudulent conveyance, that claim is an unsecured claim against Jeff Prosser's bankruptcy estate.").

The equitable interest lies in the Chapter 11 estate of New ICC.

The chapter 7 estate holds no greater interest in the Palm Beach property than Jeffrey Prosser. Based upon this court's findings regarding the fraudulent transfer and imposition of a constructive trust, the chapter 7 estate holds only bare legal title. Trustee Carroll, as the Chapter 7 estate representative, has no entitlement to the Palm Beach property.

We recommend that the District Court declare, as the appropriate remedy under Count Eight of the Complaint, that Trustee Carroll, as the representative of the bankruptcy estate of Jeffrey Prosser, has no interest in the property.

Dawn Prosser's Liability

Dawn Prosser has asserted various arguments in her opposition to Trustee Springel's Motion for Summary Judgment, none of which establish any independent entitlement to the Palm Beach property. *See* Opposition to Motion for Summary Judgment, Doc. No. 152.[62] Rather, her arguments entirely depend upon a finding that the transfer to Jeffrey Prosser was not fraudulent. Dawn Prosser has raised essentially the same defenses as Jeffrey Prosser and has raised no issue requiring separate

---

[62]

First, Dawn Prosser argues that New ICC was not insolvent shortly after the transfer of the property. *Id.* at 3. However, this is not a badge of fraud that Trustee Springel relied upon in his Complaint. *See* Reply to Jeffrey J. Prosser, Dawn Prosser, and Trustee Carroll's Responses/Objections/Oppositions, Doc. No. 157, at 3, n.6. Next, Dawn Prosser asserts that the transfer of the property was compensation to Jeffrey Prosser, Doc. No. 152, at 4. For the reasons already stated, this argument fails. *See* discussion of Consideration Received *supra* at pp. 32-37. Dawn Prosser also argues that Trustee Springel's theory of the case is illogical as the bankruptcy cases were not foreseeable at the time of the transfer. *See* Doc. No. 152, at 5. The argument fails to recognize that Jeffrey Prosser was aware of the claims against both himself and his companies at the time of the transfer. *See* note 39 *supra* and accompanying text. Foreseeability of the bankruptcy cases is not required to prove fraudulent intent. Dawn Prosser also asserts that there are no creditors who fulfill the requirements of §544(b) and that the statute of limitations bars the action. For the reasons already stated, these arguments also fail. *See* discussion of Identification of Actual Creditor *supra* at pp.14-18. *See also* discussion of Statute of Limitations *supra* at pp. 8-12.

analysis with regard to the avoidability of the transfer.

Inasmuch as the evidence here is undisputed, clear and irrefutable that Dawn Prosser provided no consideration whatsoever for the transfer to her of the Palm Beach property nor did she sign the unsecured note that Jeffrey Prosser signed or make any payments to New ICC, she can claim entitlement to the property only by way of gift. Any claim to ownership as a gift from Jeffrey Prosser, however, is not supported by the record as Jeffrey Prosser has no beneficial interest in the property. The gifting theory fails for another reason. Significantly, the transfer to Dawn did not come from Jeffrey Prosser: it was made directly to Jeffrey and Dawn Prosser by New ICC. Thus, Jeffrey Prosser had no interest to gift at the time of the transfer to Dawn Prosser. Furthermore, no one has asserted that New ICC intended to convey the Palm Beach property as a gift and there is no evidence that would support such a contention. Three elements are necessary in order to show intent to make a gift: "(1) donative intent, (2) delivery or possession of the gift, and (3) surrender of dominion and control of the gift." *Mills v. Mills*, 845 So.2d 230, 233 (Fla. Dist. Ct. App. 2003) ("Thus, a gift is made when a donor, intending to make a gift, delivers the gift to the donee and relinquishes all possession and control of the gift."). The evidence shows that the board was not aware of and did not authorize the transfer and thus New ICC did not possess the requisite donative intent and did not knowingly surrender control of the property. Moreover, Jeffrey Prosser signed a note promising to repay New ICC the purchase price plus interest, further establishing that there was no donative intent by New ICC.

Liability of transferees of avoided transfers is determined under §550, which provides that "to the extent that a transfer is avoided under section 544..., the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from...the

initial transferee of such transfer...."  11 U.S.C. §550(a)(1).  The language of §550 clearly provides that even an innocent initial transferee is liable.  *Bauman v. Bliese*, 326 B.R. 843, 853 (Bankr. M.D. Fla. 2005).  Trustee Springel has met his burden of proof and produced the requisite evidence establishing that New ICC, acting through Jeffrey Prosser, fraudulently transferred the Palm Beach property to Jeffrey and Dawn Prosser, and the transfer is avoidable.  Despite Dawn Prosser's request that the District Court withdraw its automatic reference and hold a jury trial in this matter, there are no separate issues regarding the avoidablity of the transfer as to Dawn Prosser, and summary judgment is appropriate.  As previously stated, Trustee Springel has established numerous badges of fraud, and Defendants have produced no evidence creating a genuine issue of material fact to require a trial in this matter.[63]

Conclusion

        For the foregoing reasons, we recommend that Jeffrey Prosser's Motion for Summary Judgment, Doc. No. 139, be denied, and Trustee Springel's Motion for Summary Judgment, Doc. No. 141, be granted in part and denied in part.  The transfer of the Palm Beach property is avoidable and should be avoided, and the imposition of a constructive trust is appropriate.  An appropriate recommendation and certification will be entered in accord with this Memorandum Opinion.

        Counsel for the Chapter 11 Trustee shall immediately serve a copy of this Memorandum Opinion, Recommendation, and Certification to the District Court on all parties in interest who do not receive electronic notice and shall file a certificate of service forthwith.  The Clerk of Court

---

        [63] "An issue is 'genuine' only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party....If evidence is 'merely colorable' or 'not significantly probative,' summary judgment may be granted....Where the record, taken as a whole, could not 'lead a rational trier of fact to find for the nonmoving party, summary judgment is proper.'" *Hankins v. Temple University*, 829 F.2d 437, 440 (3d Cir. 1987).

shall forward a copy forthwith to U.S.V.I. District Court Chief Judge Gomez.

Dated: 10/9/2009

DATE: 13:15:40

Judith K. Fitzgerald
United States Bankruptcy Judge

IN RE:

JEFFREY J. PROSSER,                      Bankruptcy No. 06-30009 (JKF)


     Debtor                              Chapter 7


STAN SPRINGEL, CHAPTER 11
TRUSTEE OF THE BANKRUPTCY
ESTATE OF INNOVATIVE
COMMUNICATION CORPORATION

     Plaintiff

v.                                       Adversary No. 08-03002
                                         **Related to Doc. Nos. 139** Jeffrey Prosser's Motion for
                                         Summary Judgment and **141** Trustee Springel's Motion
                                         for Summary Judgment


DAWN PROSSER; JEFFREY J.
PROSSER; JAMES P. CARROLL,
CHAPTER 7 TRUSTEE OF THE
BANKRUPTCY ESTATE OF
JEFFREY J. PROSSER; GREENLIGHT
CAPITAL QUALIFIED, L.P.;
GREENLIGHT CAPITAL, L.P.; AND
GREENLIGHT CAPITAL OFFSHORE,
LTD.,

     Defendants



**RECOMMENDATION TO THE DISTRICT COURT AND CERTIFICATION OF TRIAL
READINESS**

   **AND NOW**, this ___9th___ day of ___October___, 2009 , for the reasons expressed in the

1

foregoing Memorandum Opinion, it is **RECOMMENDED** that the District Court **ORDER, ADJUDGE, and DECREE** that (1) Jeffrey Prosser's Motion for Summary Judgment, Doc. No. 139, be denied, and (2) Trustee Springel's Motion for Summary Judgment, Doc. No. 141, be granted in part and denied in part.

**IT IS FURTHER RECOMMENDED THAT** Judgment be entered in favor of Trustee Springel and against Dawn Prosser, Jeffrey Prosser, and Trustee Carroll on Counts Two and Five of Trustee Springel's First Amended Complaint, Doc. No. 109.

**IT IS FURTHER RECOMMENDED THAT** the claims asserted in Counts One and Three be dismissed without prejudice in that they seek relief under New York (Count One) and Virgin Islands (Count Three) law. However, the applicable law is that of Florida (Count Two).

**IT IS FURTHER RECOMMENDED THAT** Summary Judgment be denied without prejudice on Counts Four, Six, and Seven. Count Nine was previously dismissed.

**IT IS FURTHER RECOMMENDED THAT**, on Count Eight, the District Court should declare that Trustee Carroll, as the representative of the Chapter 7 estate of Jeffrey Prosser, has no interest in the Palm Beach property.

**IT IS HEREBY CERTIFIED THAT,** in the event the District Court does not grant Summary Judgment, the Palm Beach Action is ready for trial for purposes of Dawn Prosser's ability to renew her Motion for Withdrawal of the Reference.

**IT IS FURTHER ORDERED THAT** Counsel for the Chapter 11 Trustee shall immediately serve a copy of this Recommendation and Certification on all parties in interest who do not receive electronic notice and shall file a certificate of service forthwith.

**IT IS FURTHER ORDERED THAT** the Clerk of Court shall forward forthwith a copy of

this Recommendation and Certification to U.S.V.I District Court Chief Judge Gomez.

Dated: 10/9/2009
13:16:47

Judith K. Fitzgerald
United States Bankruptcy Judge